**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

METROPOLITAN LIFE INSURANCE CO.,

      Plaintiff,       :      Case No. 3:09-cv-497

    -vs-                                      Magistrate Judge Michael R. Merz
                                   :

MARY SCHNEIDER-VIERS, et al.,

      Defendants.

**DECISION AND ORDER**

This case is before the Court on Motion for Summary Judgment of Mary Schneider-Viers (Doc. No. 16). Defendant Ann Coleman has filed a Memorandum Contra (Doc. No. 21) and the time for filing any further memoranda regarding the Motion has expired.

The parties have unanimously consented to plenary magistrate judge jurisdiction under 29 U.S.C. § 636(c) and the case has been referred on that basis (Doc. No. 9).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H.*

1

*Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.  Fed. R. Civ. P. 50).  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id.*.  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby,* 477 U.S. at 249-50, 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp*., 964 F. 2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis.  *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996).  "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  *United States*

2

*v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S. Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606, (6th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113 S. Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

**Undisputed Facts**

Fredrick Viers was, during his lifetime, an employee of General Motors Corporation and a participant in the General Motors Life and Disability Benefits Program.  One of the benefits of that participation was a group life insurance policy.  On October 31, 2008, Mr. Viers named his spouse, Mary Schneider-Viers, as the sole primary beneficiary of the policy.  On March 11, 2009, he signed a power of attorney naming Laura Ratliff as his attorney in fact.  Ms. Ratliff in turn on March 20, 2009, signed a beneficiary designation form naming her sister and Mr. Viers' daughter, Ann Coleman, as primary beneficiary.  Fredrick Viers died on March 26, 2009.

Ms. Ratliff's power of attorney contains the following language:

> **(G) Insurance and annuity transactions**. To exercise or perform any act, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

(Exhibit C to Complaint, Doc. No. 1, PageID 11-14.)

In executing the change of beneficiary designation, Laura Ratliff acted pursuant to the express direction of Fredrick Viers as shown by her uncontradicted affidavit to that effect.

**Analysis**

This is an action in interpleader which arises under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq.  Federal district courts have jurisdiction over such cases under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 as claimed by Plaintiff (Complaint, Doc. No. 1, ¶5, PageID 2) and undisputed by any other party.

Neither party to the Motion suggests that ERISA or other federal law provides a rule of decision in this case. Both treat Ohio law as governing interpretation of the power of attorney. The power of attorney itself provides that it "will be governed by the laws of the State of Ohio without regard for conflicts of law principles." (Exhibit C to Complaint, Doc. No. 1, PageID 14.) Ohio recognizes the validity of contractual choice of law clauses. *Crystal Clear Imaging, Ltd., v. Siemens Medical Solutions, Inc.*, 2008 WL 2114867 at *4 (S.D. Ohio May 19, 2008), citing *Boyle v. Jacor Communications, Inc.*, 799 F. Supp. 811, 813 (S.D. Ohio 1982), citing *Nationwide Mut. Ins. Co. v. Ferrin,* 21 Ohio St. 3d 43, 487 N.E. 2d 568 (1986).

When a federal court must resolve a state law question, it is bound to follow the law of the State, including its decisional law. 28 U.S.C. §1652; *Gasperini v. Center for Humanities, Inc.*, 528 U.S. 415, 427, n. 7 (1996); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), overruling *Swift v. Tyson*, 41 U.S. 1 (1841)(Story, J., holding that "the laws of the several states" in the Judiciary Act of 1789 means only the statutory law of the States).

According to Defendant Schneider-Viers, the relevant Ohio law is Ohio Revised Code 1337.20 which provides, in the part deemed pertinent by her:

> Except as modified by the principal, a power of attorney created by the use of the form set forth in section 1337.18 of the Revised Code or any other power of attorney that incorporates by reference any of the powers set forth below shall be construed as follows:
>
> (H) Language in a power of attorney granting power with respect to insurance and annuities authorizes the attorney in fact to do all of the following: …
>
> (2) procure new, different or additional contracts of insurance for the principal…
>
> (9) If specifically authorized in the power of attorney, change the beneficiary or a contract of insurance or annuity designated by the principal…

(Quoted at Motion, Doc. No. 16, PageID 69.) She reads the statute as requiring that the power of

5

attorney specifically authorize the attorney in fact to change beneficiaries on existing policies. Defendant Coleman agrees this is the relevant statute, but argues the power of attorney here authorized her to change the beneficiary.

The power of attorney in question (Exhibit C to Complaint, Doc. No. 1, PageID 11-14) purports to be an Ohio General Durable Power of Attorney. It says on its face that the powers granted by it are "explained in the Uniform Statutory Form Power of Attorney Act," but gives no reference to the Ohio Revised Code. However, the Court agrees with the parties that the referenced statute must be Ohio Revised Code § 1337.20. Mr. Viers initialed each of the separate paragraphs granting different powers to the attorney in fact, including ¶ G on insurance and annuity transactions quoted above.

The question before the Court is the correct interpretation of Ohio Revised Code § 1337.20(H). It is well settled that the first step in determining the meaning of a statute is to review the language of the statute itself. *United States v. Alvarez-Sanchez*, 511 U.S. 350 (1994); *United States v. Ron Pair Enterprises, Inc*., 489 U.S. 235, 241(1989); *The Ltd., Inc. v. Comm'r,* 286 F.3d 324, 332 (6th Cir. 2002); *United States v. Johnson*, 855 F.2d 299 (6th Cir. 1988). "'[O]nly the most extraordinary showing of contrary intention from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language.'" *Id..* at 305 (quoting *Garcia v. United States*, 469 U.S. 70, 75 (1984)). The starting point in interpreting a statute is its language, for if the intent of the legislature is clear, that is the end of the matter. *Nixon v. Kent County*, 76 F.3d 1381 (6th Cir. 1996)(en banc), quoting *Good Samaritan Hospital v. Shalala*, 508 U.S. 402 (1993)(quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 842 (1984); *In re First Truck Lines, Inc. v. Noland*, 48 F.3d 210, 213-14 (6th Cir. 1995). In interpreting statutes, courts should

> 1. Decide what purpose ought to be attributed to the statute and to any subordinate provision of it which may be involved; and then

> 2. Interpret the words of the statute immediately in question so as to carry out the purpose as best it can, making sure, however, that it does not give the words either (a) a meaning they will not bear, or (b) a meaning which would violate any established policy of clear statement.

Hart and Sacks, THE LEGAL PROCESS (Eskridge & Frickey ed. 1994), p. 1169.  A court should reject an interpretation which is "plainly at variance with the policy of the legislation as a whole." *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 399, (6th Cir. 1998)(Boggs, J.) quoting *United States v. American Truckings Ass'ns,* 310 U.S. 534, 543, 60 S. Ct. 1059, 1064, 84 L. Ed. 1345 (1940).

On its face, Ohio Revised Code § 1337.20(H)(9) requires that power to change a beneficiary designation to an existing life insurance policy from a beneficiary designated by the principal to a new beneficiary must be "specifically authorized" and the authorization must occur "in the power of attorney."  Subsection (H)(9) must be contrasted with all of the other powers listed in Subsection (H): each of them begins with a verb – the attorney in fact can (1) continue, (2) procure, (3) pay, (4) apply, (5) surrender, (6) exercise, (7) change, (8) change, (10) apply, (11) collect, and (12) pay.  Only at to changing a beneficiary of an existing policy is there a limitation to require specific authorization.  The usual implication of such a difference in structure would be that it had been carefully thought about by the drafters.  Because Ohio collects no legislative history, it is impossible to consult directly any expressions of legislators about this difference.

The Ohio General Assembly enacted Ohio Revised Code §§ 1337.18, 1337.19. and 1337.20 to become effective March 29, 2006.  Later that year the National Conference of Commissioners on Uniform State Laws recommended for adoption revisions to the Uniform Power of Attorney Act. § 210 of the 2006 version of the Act carries this commentary:

> This section contains a significant change from Section 10 of the Uniform Statutory Form Power of Attorney Act.  The default language in the Uniform Statutory Form Power of Attorney Act permitted an agent to designate the beneficiary of an insurance contract. See Unif. Statutory Form Power of Atty. Act § 10(4)(1988).

> However, under Section 210 of this Act, an agent does not have authority to "create or change a beneficiary designation" unless that authority is specifically granted to the agent pursuant to Section 201(a). The authority granted under Paragraph (2) of Section 210 is more limited, allowing an agent to only "procure new, different, and additional contracts of insurance and annuities for the principal and the principal's spouse, children, and other dependents." A principal who grants authority to an agent under Section 210 should therefore carefully consider whether a specific grant of authority to create or change beneficiary designations is also desirable.

Section 201(a) of the Uniform Act requires an attorney in fact to be given express authority to do eight different acts, including "(4) create or change a beneficiary designation."

Ohio has not adopted the Uniform Act, but Ohio Revised Code §§ 1337.18, .19. and .20 appear to have been influenced by the Act in its draft form. See Ackers, Ohio Statutory Power of Attorney Form for Financial Matters, 2006 Probate Law Journal of Ohio 96, and compare Ohio Revised Code § § 1337.20(K)(2) requiring in similar language to § (H)(9) that the attorney in fact be granted express authority to change other beneficiary relationships. The commentary to § 201(a) of the Uniform Act gives the rationale for requiring specific authority:

> This section distinguishes between grants of specific authority that require express language in a power of attorney and grants of general authority. Section 201(a) enumerates the acts that require an express grant of specific authority and which may not be inferred from a grant of general authority. This approach follows a growing trend among states to require express specific authority for such actions as making a gift, creating or revoking a trust, and using other non-probate estate planning devices such as survivorship interests and beneficiary designations. See, e.g., Cal. Prob. Code § 4264 (West Supp. 2006); Kan. Stat. Ann. § 58-654(f) (2005); Mo. Ann. Stat. § 404.710 (West 2001); Wash. Rev. Code Ann. § 11.94.050 (West Supp. 2006). The rationale for requiring a grant of specific authority to perform the acts enumerated in subsection (a) is the risk those acts pose to the principal's property and estate plan. Although risky, such authority may nevertheless be necessary to effectuate the principal's property management and estate planning objectives. Ideally, these are matters about which the principal will seek advise [sic] before granting authority to an agent.

From the distinctions drawn by the Commissioners and the structure of Ohio Revised Code

§ § 1337.20(H), the Court infers a purpose of the drafters to distinguish change of beneficiary acts by attorneys in fact from other powers of those agents with respect to insurance policies. The Ohio statute differs from the Uniform Statute by not requiring specific authority for the agent to name a beneficiary of a new policy which the agent obtains and the Court is unable to discern what purpose the General Assembly or drafters, presumably from the Ohio State Bar Association, would have had in making that distinction.

Once the statute is interpreted, its impact on this case is straightforward. The power of attorney here does not specifically authorize the attorney in fact to change the beneficiary of existing insurance policies, so Ms. Ratliff's act in purporting to do so is a nullity.

The fact that this decision prevents Ms. Ratliff from carrying out Mr. Viers' intent is unfortunate, but the law often requires certain formalities for the transfer of interests in property. Had Mr. Viers declared in front of twenty bishops[1] his intent to make a present gift of a piece of real property to his daughter Ann Coleman, the certainty of his intent would not be sufficient to convey the land. That result would not be changed by the fact that he is deceased and cannot go back and make the land transfer properly.

### Conclusion

As between Defendant Schneider-Viers and Defendant Coleman, there are no disputed facts and Defendant Schneider-Viers is entitled to judgment as a matter of law. The Court further notes that Plaintiff has complied with the Stipulated Motion for Leave to Interplead Funds and for Discharge and Dismissal (Doc. Nos. 18, 22). It is therefore ORDERED that

1.      All claims of Defendant Marker & Heller Funeral Homes, Inc., to proceeds from the life

---

[1] Twenty bishops as witnesses is an example drawn from Learned Hand.

   insurance benefits having been satisfied, all of its claims in this case are dismissed with prejudice;

2. Plaintiff MetLife, General Motors Corporation (now known as Motors Liquidation Company and/or General Motors Company), and the General Motors Life and Disability Program are hereby released and discharged from any further liability or obligations for the Plan Benefits plus any applicable interest payable under the Plan as a result of the death of the Decedent, Defendants are restrained and enjoined from instituting any action or proceeding against MetLife, General Motors or the Plan in any state or United States court for the Plan Benefits plus any applicable interest payable as a consequence of the death of the Decedent;

3. All claims of Defendant Ann Coleman are dismissed with prejudice; and

4. The Clerk shall pay the balance on deposit in the Registry of the Court with respect to this case to Defendant Mary Schneider-Viers.

   The Clerk shall enter judgment to the foregoing effect.

July 2, 2010.

                   s/ **Michael R. Merz**
                   United States Magistrate Judge